UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

KENNY SCHARF,

          Plaintiff,

    -against-                            25 Civ. 8044 (CM)

JOMBIHIS CORPORATION,

          Defendant.

——————————————————————x

## AMENDED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT, THE DENIAL BEING WITHOUT PREJUDICE TO RENEWAL

McMahon, J.:

Kenny Sharf ("Scharf" or "Plaintiff") filed suit on September 29, 2025, against Jombihis Corporation ("Jombihis" or "Defendant"), alleging that Defendant Jombihis Corporation breached a contractual obligation by failing to remit proceeds owed to Scharf from the sale of artworks that Scharf created and both parties co-owned. The Defendant was served but failed to answer the Complaint or otherwise appear in the action. The Clerk entered a certificate of default on November 6, 2025. Dkt. No. 19-4.

Scharf now moves for entry of a default judgment. He seeks principally a default judgment on his claims for breach of contract and declaratory judgment. But if the court declines to award default judgment on those claims, he asks the court to consider entering a default judgment on his claims for violation of N.Y. Arts & Cult. Aff. Law ("NYACAL") § 12.01, breach of fiduciary duty, conversion and an accounting.

1

Scharf correctly anticipates that the court might have difficulty granting the relief he seeks. His moving papers establish the well pleaded facts as true, but it is not apparent – and Scharf does not explain – why those "deemed admitted" facts entitle him to the relief he seeks on his claim for breach of contract. As the defendant is unquestionably in default, Scharf should be afforded an opportunity to make a proper motion for default judgment – one that demonstrates why, on the admitted facts, he is entitled to judgment as a matter of law. Therefore, the motion as to the breach of contract and NYACAL claims are denied without prejudice to renewal on a proper record. His claims for conversion and breach of fiduciary duty are dismissed as duplicative of his breach of contract claim; his claim for declaratory judgment is dismissed for want of subject matter jurisdiction.

Scharf's motion for a default judgment granting him an accounting from Jombihis is, however, granted.

### Background

The following well pleaded facts are admitted as true because of the defendant's default:

Scharf is a painter and visual artist. He resides in Los Angeles, California.

Jombihis Corporation is an entity organized under the laws of the Cayman Islands, owned and operated by the Mugrabi family, and active in the purchase and sale of works of art. Dkt. No. 1 ¶¶ 5–6.

The Complaint does not plead where Jombihis's principal place of business is located, but Scharf avers in his moving papers that it is located in New York City. Dkt. No. 27, at 6.

In or around March of 2006, Jombihis wanted to purchase 67 works of art Scharf had created. Dkt. No. 18 ¶¶ 1–9. Scharf owned two of the works outright. Dkt. No. 29 ¶¶ 3–6. The other 65 were co-owned by Scharf (10% ownership interest) and three other persons (90%). *Id.*

2

On March 13, 2006, Jombihis obtained the 90% ownership interest from the other three owners of the works. Scharf was supposed to be paid so that Jombihis could also acquire his 10% ownership interest. Dkt. No. 1-1. But Scharf objected to the sale. So Plaintiff and Defendant entered into negotiations for a new ownership arrangement. Dkt. No. 29 ¶¶ 3, 5.

On November 5, 2007, following protracted discussions, the parties reached the following agreement: Scharf would create and deliver four new paintings to Jombihis. Scharf would retain a 10% ownership interest in both the 65 paintings that were 90% owned by Jombihis and in the four newly created paintings. Jombihis would have a 90% ownership interest in the four new paintings. Dkt. No. 29 ¶ 5. The agreement gave Jombihis a 90% ownership interest in all 69 works. Dkt. No. 18 ¶¶ 1–9. Scharf was to receive 10% of the proceeds from the sale of all 69 paintings.   Dkt. No. 1-1. The agreement was executed by Jombihis on November 12, 2007, and by Scharf on January 15, 2008 (the "2007 Agreement" or the "Agreement"). Dkt. No. 29 ¶ 5; Dkt. No. 29-1.

The 2007 Agreement authorized Jombihis to sell the artworks at its sole discretion, provided it paid Scharf 10% of the sales proceeds. Dkt. No. 1-1. Under the Agreement, Jombihis was implicitly required to timely notify Scharf of any sale and pay him his 10% of the proceeds. *Id.*; Dkt. No. 18 ¶¶ 1–9.[1]

Between the execution of the 2007 Agreement and April 2015,[2] Scharf received 10% of the sales proceeds for 16 works that were sold by Jombihis. Dkt. No. 1 ¶ 14. Thereafter Scharf received nothing more.

---

[1] As a matter of law this is correct: since Jombihis owed Scharf 10% of the proceeds from any sale of one of the 69 works, the contract fairly implied that Scharf would be told when a painting was sold. *See, e.g., Evvtex Co. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1332 (2d Cir. 1996) (holding that agents have an affirmative duty to disclose information that is "relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have").

[2] Jombihis may not have satisfied its obligations to Scharf as of April 2015. Evidence in the record suggests that as of 2025, Jombihis has failed to remit Scharf's payment for a work it sold in 2013. Dkt. No. 29-4, at 1. However, any

At some point (when is neither pleaded nor disclosed in the moving papers), counsel for Scharf inquired about the status of his unsold paintings, and learned that Jombihis had sold ten more paintings without notifying Scharf or paying Scharf his portion of the proceeds. Dkt. No. 18 ¶ 8. According to information provided by Jombihis, the total amount of proceeds from these ten sales was $2,526,530, which means that Scharf should have received 10% of that sum, or $252,653. Dkt. No. 18-1 ¶ 8. In his Complaint, Scharf lists the ten works sold and their respective years of creation,[3] Dkt. No. 1 ¶ 8. however, the date(s) on which the paintings were sold is not pleaded in the Complaint or revealed in the moving papers.

On August 28, 2025, Scharf demanded that Jombihis pay him his share of the proceeds from the ten paintings it had sold. Dkt. No. 29-4, at 1. Scharf also listed the 43 unsold works and reminded Defendant of its obligation to timely notify and pay Scharf in the event of a future sale. *Id.* at 2.

On September 3, 2025, Jombihis responded by offering to pay Scharf 5% of the proceeds from the ten works it had already sold—not 10%, as provided in the 2007 Agreement—and to do so with the understanding that, once that reduced payment was made, all of Defendant's obligations under the 2007 Agreement would be satisfied. Had Plaintiff agreed to Jombihis' proposal, Defendant would not have owed Scharf any portion of the proceeds from the sale of the 43 remaining works. *Id.* at 1. Needless to say, Scharf did not agree to Jombihis' proposal.

This lawsuit followed. Plaintiff filed a Complaint on September 29, 2025, asserting causes of action for breach of contract, violation of N.Y. Arts & Cult. Aff. Law § 12.01, accounting, declaratory judgment, conversion, breach of fiduciary duty. Dkt. No. 1.

---

[3] As to one of the works, we do not know when it was painted. There appears to be a typographical error, as the Complaint says the work was completed in 2022, fourteen years after Scharf executed the 2007 Agreement and delivered the four new works. Dkt. No. 1 ¶ 8.

4

On October 6, 2025, Defendant was served with the Summons and Complaint. Dkt. No. 19 ¶ 5; Dkt. No. 19-1. Although Jombihis or its representatives are alleged to have communicated with Scharf's counsel both before and after the lawsuit was filed, Jombihis defaulted in responding to the Complaint.  Dkt. No. 19-2.

On November 6, 2025, Scharf obtained a Certificate of Default. Dkt. No. 19-4.

On December 1, 2025, Plaintiff moved for a default judgment. He principally seeks damages in the amount of $252,653 for Jombihis' failure to pay him for the ten artworks that he has admitted selling. He also seeks a declaration that Jombihis will owe him 10% of the amount realized on any future sale of a Scharf work that is the subject of the 2007 Agreement.

## Discussion

### A.  *Default Judgment*

The standards for awarding a default judgment are clear. By failing to answer the Complaint or oppose Plaintiff's motion for entry of a default judgment, Defendant is deemed to have admitted the well-pleaded factual allegations in the Complaint. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, the Defendant's default does not establish liability as a matter of law. The court must examine the pleading and determine whether the deemed-admitted factual allegations establish the defaulting defendant's liability as a matter of law. This means the court must ascertain whether it has subject matter jurisdiction over the claim; personal jurisdiction over the defaulting defendant; and whether the plaintiff has pleaded facts that establish liability as a matter of law. The simple fact of a default does not automatically entitle the plaintiff to relief.

Furthermore, Jombihis's failure to appear constitutes an admission of all well-pleaded allegations in the Complaint only as to liability, not as to damages. *A&B Alternative Marketing,*

5

*Inc. v. Int'l Quality Fruit, Inc.*, 35 F.4th 913, 915 (2d Cir. 2022). Therefore, once the defaulting defendant's liability is established, the court must ascertain the amount of damages to award "with reasonable certainty." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Plaintiff must offer evidence in support of its claim for damages, *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012), so that the court can ensure there is "a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

The court accepts Scharf's well-pleaded factual allegations as true and draws all reasonable inferences in his favor. *Finkel*, 577 F.3d at 84; Fed. R. Civ. P. 55(a).

### B.   Jurisdiction

A court cannot enter a default judgment unless the Plaintiff establishes a basis for both subject matter and personal jurisdiction. In this case, Plaintiff has done both.

#### 1.   Subject Matter Jurisdiction

All of Plaintiff's claims arise under state law. This Court has diversity jurisdiction over those claims. Plaintiff is a citizen of California and the Defendant is a citizen of the Cayman Islands and New York, where its principal place of business is allegedly located. Dkt. No. 1 ¶¶ 5–6; Dkt. No. 27, at 6. Plaintiff seeks damages, exclusive of attorneys' fees and costs, in an amount no less than "$252,653," which exceeds the jurisdictional threshold of $75,000. *See* 28 U.S.C. § 1332(a)(2); Dkt. No. 1-1 at ¶ 25.

###### 2.    *Personal Jurisdiction*

To establish personal jurisdiction over the Defendant, Plaintiff relies on N.Y.C.P.L.R. § 301, which authorizes courts to exert general jurisdiction over foreign corporations when their affiliations with the state are so "continuous and systematic" as to render them essentially at home in the forum. *Aybar v. Aybar*, 37 NY.3d 274, 289 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). A corporation is "at home" in its place of incorporation and principal place of business. *Id.* Plaintiff avers that Defendant's principal place of business is 390 Park Avenue, New York, NY. 10022, and that this office is where Jombihis's operational and managerial decisions are made. Dkt. No. 28 ¶ 12; Dkt. No. 27, at 2. Because Jombihis "is fairly regarded at home" in New York, this Court has general jurisdiction over Jombihis. I agree with Plaintiff that, on the uncontested facts, the exercise of general jurisdiction is appropriate.

Were Defendant's principal place of business outside New York, then personal jurisdiction nevertheless attaches by virtue of CPLR 302(a)(1). Plaintiff has pleaded that Defendant negotiated and executed the 2007 Agreement in New York, and that his claims arose from Defendant's failure to live up to its obligations under that agreement. Dkt. No. 28 ¶¶ 4, 7–8. Furthermore, Plaintiff alleges that Defendant directed that the four new Scharf paintings be delivered to Jombihis' office in New York; and that Plaintiff visited Jombihis' New York office to collect payment for the works that were sold. *Id.* at ¶ 11. For these reasons, exercising personal jurisdiction over the Defendant also comports with due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013).

Accordingly, the Court has personal jurisdiction over the Defendant. *Id.*

### C.    *Governing Law*

The United States Court of Appeals for the Second Circuit has held that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). New York's choice of law analysis distinguishes between questions of substantive and procedural law – the former following "the course charted by choice of law analysis" and the latter being governed by the law of the forum. *Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 53 (1999).

To determine whether to apply New York substantive law to contract claims, "New York applies a 'grouping of contacts' or 'center of gravity' approach." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997).

In making this determination, the court should consider "(1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998); *NYQF Inc. v. Sigue Corp.*, 781 F.Supp.3d 104, 118 (E.D.N.Y. May 6, 2025).

New York substantive law applies to the Plaintiff's claims. While the contract does not contain a choice of law provision, and the plaintiff is not a citizen of New York, the Defendant allegedly has its principal place of business in New York; the contract was negotiated and signed in New York; and performance took place in New York – Plaintiff was required to come to New York, where Jombihis, an art dealer, had its office, in order to receive payment for the paintings that Jombihis sold. Dkt. No. 28 ¶ 11. *Id.* ¶¶ 7–8, 11–12, 16. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey. Inc.*, 448 F.3d 573, 583 (2d Cir. 2005).

### D.    *Statute of Limitations*

In addition to establishing that the court has jurisdiction, the Plaintiff must establish that his claims are not barred by the statute of limitations.

New York courts consider statutes of limitation to be procedural rather than substantive "because they are viewed as pertaining to the remedy rather than the right." *Tanges*, 93 N.Y.2d at 54. As a result, the choice-of-law analysis is not dispositive of the applicable statute of limitations, which is instead governed by the N.Y.C.P.L.R. *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529, 715 N.E.2d 482, 485 (1999).

The C.P.L.R. provides that a cause of action accrues "at the time and in the place of the injury." *Glob. Fin. Corp.*, 93 N.Y.2d at 529. "When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.*

Scharf is not a resident of New York. "Under C.P.L.R. § 202, when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 628 (2d Cir. 1998); *see Deutsche Bank Na'l Tr. Co. v. Barclays Bank PLC*, 34 N.Y.3d 327, 334 (2019); N.Y.C.P.L.R. § 202. If the foreign state's statute of limitations is shorter than New York's, the foreign limitation period determines the timeliness of the action. *Deutsche Bank Nat'l Tr. Co.*, 34 N.Y.3d at 339. The purpose of C.P.L.R. § 202 is to prevent forum shopping by nonresidents seeking a more favorable limitations period in New York. *Glob. Fin. Corp.*, 93 N.Y.2d at 528.

Plaintiff is a resident of California, Dkt. No. 1 ¶ 5, and his claims accrued in California because that is where he resided when he lost money because Defendant failed to pay him as required by the contract. California is thus the place where Scharf sustained his economic injuries.

9

*Deutsche Bank Nat'l Tr. Co.*, 34 N.Y.3d at 339. Therefore, C.P.L.R. § 202 applies, and the Court must determine whether Plaintiff's claims are timely under both New York and California law – with the shorter limitations period being the governing limitations period.

Rules of accrual, however, are substantive. *Tanges*, 93 N.Y.2d at 53. Having concluded that New York substantive law applies, the Court must apply New York's rules of accrual to the relevant limitations period.

### 1. *Breach of Contract*

For breach of contract claims, New York provides a six-year limitation period, C.P.L.R. § 213(2), while California provides a four-year period, Cal. Civ. Proc. Code § 337. Therefore, the California limitations period applies to Scharf's breach of contract claims.

Under New York law, a breach of contract claim accrues from the moment of the breach, regardless of whether the plaintiff is aware of the breach or has yet sustained damages. *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). Where a contract requires continuing performance, each failure to perform gives rise to a separate claim, with its own limitations period. *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 611 (1979); *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 121–22 (2d Cir. 2020). Under the continuing wrong doctrine, each failure to remit payment following a sale constitutes a separate breach of contract, with its own limitations period. *Bulova Watch Co. v. Celotex Corp.*, 46 N.Y.2d 606, 611 (1979). To recover damages for any given breach, that breach must have occurred within the statute of limitations. *Garron v. Bristol House, Inc.*, 162 A.D.3d 857, 859 (2d Dep't June 20, 2018) (citing *Bulova Watch Co.*, 46 N.Y.2d at 611).

### 2. *Declaratory Judgment*

The federal Declaratory Judgment Act does not contain a statute of limitations. Instead, courts must examine the substance of the action to identify and apply the limitation period that

would govern if the claim were brought in another form. *See, e.g.*, *Solnick v. Whalen*, 49 N.Y.2d 224, 229–33 (1980); *Grosz v. Museum of Modern Art*, 772 F.Supp.2d 473, 481 (S.D.N.Y. Jan. 6, 2010) *aff'd*, 403 Fed.Appx. 575 (2d Cir. 2010), *cert. denied*, 565 U.S. 819 (2011); *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993). Here, the underlying claim sounds in contract. Accordingly, California's four-year limitation period applies. *See* C.P.L.R. § 202; Cal. Civ. Proc. Code § 337.

### 3.    *Breach of New York Arts and Cultural Affairs Law § 12.01*

The NYACAL does not prescribe a specific limitations period for damages claims. New York's catch-all statute, N.Y.C.P.L.R. § 213(1), provides a six-year limitations period for actions "for which no limitation is specifically prescribed by law." *See Pindell v. N'Namdi*, No. 20-Civ-818 (PGG) (KNF), 2021 WL 9036271, at *9 (S.D.N.Y. June 8, 2021). California's analogous fine art consignment law, Cal. Civ. Code § 1738 *et seq.*, also lacks an explicit statute of limitations. Consequently, such claims are governed by the four-year residual limitations period under California's catch-all statute. *See* Cal. Civ. Proc. Code § 343. Therefore, the applicable limitations period for Plaintiff's claim under the New York statute is four years.

As discussed below, under NYACAL § 12.01, a consignment relationship imposes fiduciary obligations on the art merchant that persist until they are discharged in full. NYACAL § 12.01(1)(a)(iv); *see Khaldei v. Kaspiev*, 135 F.Supp.3d 70, 77–78 (S.D.N.Y. Sept. 28, 2015); *see also Scher v. Stendha; Gallery, Inc.*, 117 A.D.3d 146, 158 (1st Dep't Mar. 27, 2014). Under New York law, the moment at which the limitations period for breach of fiduciary duty claims accrues depends upon the substantive nature of the relief sought. *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 138 (2009). Claims for damages accrue at the moment of the alleged wrongful act or omission (such as the failure to make payment) – not when the

11

plaintiff discovers the breach. *Id.* at 139. By contrast, claims seeking equitable relief do not accrue until the fiduciary openly repudiates the fiduciary relationship or the relationship is otherwise terminated. *Berejka v. Huntington Med. Grp., P.C.*, 235 A.D.3d 821, 823 (2d Dep't Feb. 19, 2025). The "fiduciary tolling rule" applies only to claims seeking equitable relief and does not extend to claims for monetary damages, regardless of the ongoing fiduciary relationship. *Access Point Med., LLC v. Mandell*, 106 A.D.3d 40, 45 (1st Dep't Apr. 2, 2013); *see Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F.Supp.3d 700, 708 (S.D.N.Y. Mar. 28, 2016).

### 4. Accounting

Under New York law, the limitations period for equitable accounting relief against a trustee or other fiduciary is six years. *See* N.Y.C.P.L.R. 213(1); *Tydings v. Greenfield, Stein & Senior, LLP*, 11 N.Y.3d 195, 201 (2008). In California, the statute of limitations for accounting claims follows the limitation period of the underlying substantive right, whether contract, tort, or other legal theory. *Abbey v. United States*, 112 F.4th 1141 (9th Cir. 2024); *see Jefferson v. J. E. French Co.*, 54 Cal.2d 717, 718 (1960). Whether the gravamen of the Complaint is breach of written contract or fiduciary duty, the statute of limitations for an equitable accounting remedy is four years in California. *See* Cal. Civ. Pro. Code § 343; *Fed. Deposit Ins. Corp. v. McSweeney*, 772 F. Supp. 1154, 1157 (S.D. Cal. 1991), *aff'd sub nom. F.D.I.C. v. McSweeney*, 976 F.2d 532 (9th Cir. 1992); Cal. Civ. Pro. Code § 337; *Jefferson*, 54 Cal.2d at 720. Therefore, the applicable limitations period is four years.

Claims seeking relief in the form of equitable accounting accrue when the fiduciary openly repudiates the fiduciary relationship. *Access Point Med., LLC v. Mandell*, 106 A.D.3d 40, 45 (1st Dep't Apr. 2, 2013).

### 5.    *The Statute of Limitations is Four Years*

Per the above, all of Scharf's claims are timely if they accrued within four years prior to the commencement of this lawsuit – specifically, on or after September 29, 2021.

### E.    **Breach of Contract**

In his First Cause of Action, Plaintiff alleges that Jombihis is liable to him for breach of contract. To prevail on a breach of contract claim, a plaintiff must establish: (1) the existence of a valid contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach; and (4) resulting damages. *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (citing *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).

The existence of a contract is not in dispute. Dkt. No. 1-1. Neither is Plaintiff's performance. Pursuant to the 2007 Agreement, Scharf was obligated to create and deliver four new paintings to Jombihis; he did so. Dkt. No. 29-1; Dkt. No. 29-3, at 1. All of this is deemed admitted.

The well-pleaded facts in the Complaint establish that, at some point in time, Jombihis breached the contract. The Agreement authorized Jombihis to sell any of the works at its discretion, provided it remitted 10% of the sales proceeds to Scharf. Dkt. No. 1-1. The record reflects that Jombihis complied with this obligation for sixteen sales between 2007 and April 2015, but thereafter sold ten additional works without notifying Plaintiff or remitting his required share of the proceeds. Dkt. No. 1 ¶¶ 17–20. The Complaint adequately pleads that Jombihis admitted to Plaintiff's counsel that it had sold the paintings but had remitted no payment.

Because the Agreement does not specify when payment must be made, New York law implies performance within a "reasonable time" after the sale. *Savasta v. 470 Newport Assocs.*, 82 N.Y.2d 763, 765 (1993); *Schmidt v. McKay*, 555 F.2d 30, 35 (2d Cir. 1977). What constitutes a reasonable time is ordinarily a fact-specific inquiry, informed by the nature and object of the

13

contract, the parties' course of dealing, and surrounding circumstances. *Savasta*, 82 N.Y.2d at 765; *see Jafari v. Wally Findlay Galleries*, 741 F.Supp.64, 67 (S.D.N.Y. July 6, 1990).

Scharf has neither pleaded nor proven when each of the ten works was sold. It is not necessary to have that information in order to conclude that the facts pleaded establish a breach of contract. *Johnson v. Giles*, No. 1:23-CV-2444 (MKV), 2024 WL 4240446, at *10 (S.D.N.Y. Sept. 19, 2024); *see Zev v. Merman*, 73 N.Y.2d 781, 783 (1988). But since I have no idea when the sales took place, I do not know whether Scharf's claims for damages for those ten paintings are time-barred. As damages is an element of a claim for breach of contract, I cannot enter a default judgment in his favor on his claim for breach of contract. I cannot award him the damages he seeks on default.

Plaintiff has also not pleaded the date or dates when his lawyer contacted Jombihis to inquire about additional painting sales. However, that is irrelevant to the date of each breach, which occurred within a commercially reasonable time after each sale took place. Plaintiff has pleaded no facts tending to show that he was incapacitated or otherwise unable to make periodic inquiries of Defendant about the status of his unsold works between 2015 and whatever date the inquiry was ultimately made. In the absence of any facts tending to show lack of capacity, it is possible that Plaintiff has simply slept on his rights. He cannot keep the statute of limitations from running by asserting that he was unaware of Jombihis' breaches until whatever date the lawyer finally made the inquiry, because, as noted above, the statute of limitations for breach of contract runs from the date of the breach – not the date on which the plaintiff discovers the breach.

In other words, on the record presently before me I have no way of knowing which of the ten admitted sales (if any) took place after September 21, 2021. I cannot infer that all the sales fell within the limitations period, because the Complaint alleges that Jombihis' nonpayment has

14

persisted for "at least a decade," Dkt. No. 1 ¶ 14; Dkt. No. 29-4, at 1. That well-pleaded allegation, which I must accept as true, makes it virtually impossible to conclude that all of the ten sales occurred after September 29, 2021. Perhaps some of the sales fell within the limitations period; perhaps all did; perhaps none did. I just don't know.

In short, I have no way of ascertaining whether, as a matter of law, Plaintiff is entitled to the relief he seeks – even though he has established that Jombihis breached the 2007 Agreement by selling paintings without paying him. This precludes the entry of a default judgment for any amount, including specifically the $252,653 demanded by the Plaintiff.

Nor can I calculate the amount of pre-judgment interest to which plaintiff is entitled. Such interest is available under New York law when a breach of contract is remedied by money damages. In a diversity action, "state law governs the award of pre-judgment interest." *Blue Citi, LLC v. 5Barz Int'l, Inc.*, 338 F.Supp.3d 326, 340 (S.D.N.Y. Sept. 19, 2018). Under New York law, "Where the breach of contract was a failure to pay money, the plaintiff is entitled to recover the unpaid amount due under the contract *plus interest*." *House of Diamonds v. Borgioni, LLC*, 737 F.Supp.2d 162, 172 (S.D.N.Y. Aug. 25, 2010) (citing *Scavenger, Inc. v. GT Interactive Software Corp.*, 289 A.D.2d 58, 58 (1st Dep't Dec. 11, 2001)) (Emphasis added). The starting date from which a court computes prejudgment interest is "the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). Scharf therefore is entitled to pre-judgment interest on the amount he was owed for each sale at the applicable rate of nine percent per annum, starting on the date when payment was due – a commercially reasonable time after each sale was made. *See* N.Y. C.P.L.R. §§ 5001, 5004. Until we know when the sales were made, it is not possible to calculate the pre-judgment interest he is owed for each viable breach (i.e., each breach that occurred within the limitations period).

The best I can do for Plaintiff is to deny the motion for default judgment without prejudice so that he can establish with reasonable certainty the amount of damages to which he is entitled. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). I am sending this matter to the assigned Magistrate Judge, who can conduct an inquest and ascertain the amount of damages (if any) that Plaintiff is able to recover.  At such inquest, Plaintiff will need to establish when the sales took place and offer evidence about what qualifies as a commercially "reasonable time" for remitting payment following the sale of a work of art -- a matter than can easily be established with evidence of industry custom.  *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). If this requires discovery, the Magistrate Judge will superintend the necessary discovery. If the Defendant refuses to cooperate with discovery, this Court will be perfectly justified in drawing inferences in Plaintiff's favor.

### *F.     Declaratory Judgment*

Although Plaintiff asserts a standalone claim for declaratory relief, the Declaratory Judgment Act is "procedural only" and does not create an independent cause of action. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012). The Court therefore treats Count 5 as a request for a particular remedy rather than as a standalone claim.

Plaintiff asks the court to enter a declaration that "for each unsold artwork, Jombihis must timely report sales information to Scharf and pay over to Scharf his 10% portion of the sales proceeds upon request and as he may direct." Dkt. 1 ¶ 47. This, I fear, I cannot do.

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" or "controversies," as distinguished from advisory opinions. U.S. Const. art. III, §§ 1–2;

*see Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993). "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, (1992)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Id.* at 409. "Allegations of *possible* future injury" are not sufficient. *Id.* at 408 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

The case in controversy requirement is written into Declaratory Judgment Act (DJA), which provides that "In a case of *actual controversy* within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (Emphasis added). The DJA "does not expand the subject matter jurisdiction of the federal courts," *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th. 85, 92 (2d Cir. 2023) (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013)); rather, the existence of an "actual controversy" is a jurisdictional prerequisite, coextensive with the "cases and controversies" requirement under Article III. It must be satisfied before a federal court can award declaratory relief. *Id.* at 92 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

An "actual controversy" exists if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Whether a real and

17

immediate controversy exists . . . must be determined on a case-by-case basis." *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991); *see Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504 (2d Cir. 1968). Without an actual controversy, the court lacks subject matter jurisdiction to award declaratory relief. *Bank v. NFL Props. LLC*, No. 25-CV-3981 (CM), 2025 WL 2961849, at *3 (S.D.N.Y. Oct. 20, 2025). "The party seeking a declaratory judgment bears the burden of proving that the Court has jurisdiction." *Bank*, at *4 (citing *E.R. Squibb & Sons v. Lloyd's & Companies,* 241 F.3d 154, 177 (2d Cir. 2001)).

But the jurisdictional inquiry is only the first hurdle that a plaintiff seeking a declaratory judgment must surmount. "Even where an actual controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F.Supp.3d 233, 254 (S.D.N.Y. June 7, 2023) (quoting *Amusement Indus., Inc. v. Stern*, 693 F.Supp.2d 301, 311 (S.D.N.Y. Mar. 1, 2010)). "The Declaratory Judgment Act thus 'confers a discretion on the courts rather than an absolute right upon the litigant.'" *Id.* (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).

In determining whether to exercise its permissive jurisdiction under the DJA, district courts must consider (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty. *Madhu v. Socure Inc.*, 693 F.Supp.3d 405 (S.D.N.Y. Sept. 22, 2023) (citing *Duane Reade, Inc.*, 411 F.3d at 389). Because "declaratory relief is intended to operate prospectively, there is no basis for declaratory relief where only past acts – such as a breach of contract for which damages are sought – are involved." *Alta Partners, LLC v. Getty Images*

18

*Holdings, Inc.*, 700 F.Supp.3d 32, 48 (S.D.N.Y. Oct. 26, 2023) (internal quotations omitted), *aff'd*, No. 23-7876, 2026 WL 111085 (2d Cir. Jan. 15, 2026).

Scharf seeks a declaration that, if Jombihis sells any of the remaining 43 co-owned works, it must timely report those sales and remit to Scharf his 10% share of the proceeds. Dkt. No. 20, at 3. Scharf argues that declaratory relief is warranted because (1) "43 of the 69 co-owned works remain unsold" and Jombihis previously failed to remit proceeds for ten co-owned paintings, and (2) Jombihis "has informed Scharf that it is unwilling to fully pay Scharf for future sales of the 43 artworks purportedly still unsold." Dkt. No. 20, at 6–7. Scharf believes that the entry of such a forward looking declaration will establish liability for any future breaches by Jombihis without "having to establish liability in any successive claims for future sales of co-owned works." Dkt. No. 20, at 4.

But the court cannot – or if it can, will not – enter a default judgment to that effect.

### 1.    *The Court Lacks Jurisdiction to Award Declaratory Relief*

On this record, the Court lacks subject matter jurisdiction to award declaratory judgment, because Scharf failed to show a "substantial controversy . . . of sufficient immediacy and reality" regarding future sales of the remaining works. *Duane Reade, Inc*, 411 F.3d at 388; *see* 28 U.S.C. § 2201(a).

Scharf's Complaint pleads no facts tending to show that Jombihis is presently engaging in conduct that threatens Scharf's contractual right to payment of 10% of the sales proceeds for the 43 unsold paintings. It pleads prior breaches and an effort by Jombihis to get out from under the terms of the 2007 Agreement. Dkt. No 1 ¶¶ 15–20. But it does not plead that other works are presently being sold and payment for those sales withheld. The Court cannot infer such intent from the well-pleaded factual allegations, because the 2007 Agreement does not obligate Jombihis to

19

sell the works, either at all or on any set schedule. It permits Jombihis to do so at its sole discretion. Dkt. No. 1-1. The possibility that Jombihis will choose to sell any specific work that it co-owns with Plaintiff and will then fail to abide by its obligations under the 2007 Agreement is "too speculative" to establish an actual controversy. *Clapper*, 568 U.S. at 408. And in the absence of an actual controversy, a declaratory judgment opining on what the law would be if Jombihis were to sell a co-owned work without paying Scharf would be purely advisory. *See Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 91–92 (2d Cir. 2023) (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Scharf cites Jombihis's ten prior breaches as evidence of the need for declaratory judgment regarding the 43 artworks yet to be sold. Dkt. No. 20, at 3. However, prior breaches do not necessarily give rise to an inference that Jombihis will commit future breaches. Although past wrongs bear on "whether there is a real and immediate threat of repeated injury," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), the threatened injury must nevertheless be "*certainly impending*" to be considered "imminent" for purposes of Article III standing. *Clapper*, 568 U.S. at 408. Here, Scharf has offered no evidence that a future breach with respect to any of the 43 unsold paintings is "certainly impending." *Id.* Without more, the threat that Jombihis will breach the 2007 Agreement at some point in the future amounts to little more than "Allegations of *possible* future injury," which are insufficient to establish an actual controversy. *Id.* (emphasis in original).

Scharf also contends that declaratory relief is warranted because Jombihis has expressed the intention to withhold payment on future sales of Scharf's artworks. Dkt. No. 20, at 3. To support his claim that Jombihis "is unwilling to pay Scharf for future sales of the 43 artworks purportedly unsold," Scharf points to an email from Jombihis, in which it offered to pay Scharf half of what it owed in exchange for Scharf's interests in the remaining artworks. Dkt. No. 29-4. In the email,

20

Jombihis refers to this offer as a "final settlement,"[4] which Scharf unequivocally declined. Dkt. No. 19-2.

This too falls short of presaging an actual controversy ripe for declaratory judgment. Jombihis's purported unwillingness to pay Scharf for future sales, even when considered in light of its ten prior breaches, is insufficient to overcome the fact that the possibility of nonpayment – or even of any sales – remains entirely speculative. *Clapper*, 568 U.S. at 408. The Court cannot "give opinions advising what the law would be upon a hypothetical state of facts." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 91–92 (2d Cir. 2023) (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). The fact that Jombihis tried to negotiate its way out of the 2007 Agreement is not conclusive evidence that it will not abide by the Agreement in the future.

Plaintiff's reliance on *Harleysville Insurance Company v. Certified Testing Laboratories, Inc.*, 681 F.Supp.3d 155, 165 (S.D.N.Y. July 7, 2023), is misplaced. *Harleysville* involved a live dispute over an insurer's ongoing duty to defend its insured in an underlying action. In that case, the insurer was forced to continue paying defense costs under protest to avoid potential liability for breach. *Id.* at 166. Here, no such ongoing controversy exists. Unlike the *Harleysville* plaintiff, Scharf faces no uncertain obligations and is not performing under the 2007 Agreement for fear of future liability; he has already fully performed. *See Intell. Cap. Partner v. Institutional Credit*

---

[4] The Court can consider this email in its analysis because it falls outside the prohibition of Rule 408 of the Federal Rules of Evidence, which bars evidence from settlement negotiations to "prove or disprove the validity or amount of a disputed claim" but may offer such evidence for "another purpose." FED. R. EVID. 408; *see Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999). For Rule 408 to apply, the communications must concern "an actual dispute, or at least an apparent difference of opinion between the parties as to the validity of a claim." *Alpex Computer Corp. v. Nintendo Co.*, 770 F. Supp. 161, 163 (S.D.N.Y. 1991); *see In re B.D. Int'l Discount Corp.*, 701 F.2d 1071, 1074 n.5 (2d Cir. 1983) (citing 2 WEINSTEIN'S FEDERAL EVIDENCE § 408[01] (1981)). "The policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lesser sum." *See* FED.R.EVID. 408 Advisory Committee's Notes; *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1354 (11th Cir. 2011). Here, Jombihis disputes neither the validity nor amount of the claim therein; rather, Jombihis endeavored to induce Scharf to settle "an admittedly due amount for a lesser sum."

*Partners LLC*, 2009 WL 1974392, at \*6 (S.D.N.Y. July 8, 2009). The fact that 43 works remain unsold (at least as far as we know) does not create a justiciable controversy analogous to the active duty-to-defend dispute in *Harleysville*, particularly since Plaintiff has no right to have the works sold; selling them remains in Jombihis' sole discretion. If Jombihis never sells another co-owned work, it will owe nothing to Scharf.

The real reason why Plaintiff wants a declaratory judgment is so that something said by this Court today will prove dispositive in the event of any future breach by Jombihis. Dkt. No. 1 ¶ 47; Dkt. No. 20, at 4. But that is precisely why this Court cannot issue what is ultimately an advisory opinion against the possibility of future breaches by Defendant. Courts in this country do not sit to make it easier for parties to prevail if and when hypothetical disputes ripen.

Plaintiff has not shown a substantial controversy of sufficient immediacy and reality to warrant declaratory judgment. Accordingly, under the DJA, the Court lacks jurisdiction to award the declaration Plaintiff seeks.

2.    *The Court Would Not Exercise Its Discretion To Grant Declaratory Relief*

Even if this Court had jurisdiction under the DJA, it would, in its discretion, decline to exercise such jurisdiction to award declaratory judgment here.

Courts generally deny declaratory relief "when other claims in the suit will resolve the same issues." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins.*, 309 F.Supp.3d 89, 99 (S.D.N.Y. Feb. 14, 2018) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003)); *see, e.g., Jujamcyn Theaters, LLC v. Fed. Ins. Co.*, 659 F.Supp.3d 372, 383 (S.D.N.Y. Mar. 6, 2023); *Amusement Indus., Inc. v. Stern*, 693 F.Supp.2d 301, 311 (S.D.N.Y. Mar. 10, 2010); *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483 (MKB), 2017 WL 3452073, at \*17 (E.D.N.Y. Aug. 8, 2017) (collecting cases); *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F.

Supp. 2d 126, 134 (N.D.N.Y. July 8, 2008) (collecting cases); *see also*, *Apple Recs., Inc. v. Capitol Recs., Inc.*, 137 A.D.2d 50, 54 (1st Dep't 1988) (citing *James v. Alderton Dock Yards, Ltd.*, 256 N.Y. 298, 305 (1931)).

Ironically, Defendant's failure to appear in this action affords Plaintiff what he seeks without the need for any declaratory relief. Assuming there is at least one sale and non-remittance that is not time-barred, the court will enter a default judgment that will establish both of the following: that there exists a valid contract between Plaintiff and Defendant, and that Plaintiff is contractually entitled to receive 10% of the sales price for a work sold by the terms of the 2007 Agreement. If Jombihis fails to remit payment in connection with a future sale, Scharf can argue that principles of former adjudication preclude Jombihis from contesting either the validity of the contract or that its terms entitle Plaintiff to 10% of the price received upon sale. By deciding Plaintiff's other claims, the Court has resolved the same issues Plaintiff seeks to clarify by declaration. *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins.*, 309 F.Supp.3d 89, 99 (S.D.N.Y. Feb. 14, 2018) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003)); *see Morris v. Jones*, 329 U.S. 545, 550–51 (1947) (stating that a default judgment is entitled to *res judicata*). A declaratory judgment would, therefore, serve no useful purpose. *Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.*, No. 08-CV-1558, 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009) (citing *Core-Mark Int'l v. Commonwealth Ins. Co.*, No. 05-CV-183, 2006 WL 2501884, at *9 (S.D.N.Y. Aug. 30, 2006)).

Neither would a declaratory judgment "finalize the controversy and offer relief from uncertainty." *Jujamcyn Theaters LLC v. Fed. Ins. Co.*, 659 F.Supp.3d 372, 383 (S.D.N.Y. Mar. 6, 2023) (citing *Duane Reade, Inc.*, 411 F.3d at 389). The Court's ruling on the breach of contract claim finalizes the controversy as effectively as would any declaratory judgment. In order to

recover for any future breach, the Plaintiff would still have to bring a lawsuit; it would simply rely on former adjudication principles instead of an advisory declaration in order to establish his right to relief.

That Scharf frames his request in forward-looking terms does not alter this conclusion. Even where a contract contemplates future performance, a court's determination on the breach of contract claim may "sufficiently guide the parties on their future performance of the contracts, thereby obviating any need for declaratory judgments." *Apple Recs. Inc. v. Capital Recs., Inc.*, 137 A.D.2d 50, 54 (1st Dep't May 17, 1998). To hold otherwise would allow declaratory relief for any breach of a contract that contemplates future performance, even when such relief would be wholly duplicative of the Court's analysis of the contract claim and corresponding damages award.

For these reasons the court will not enter a default judgment on plaintiff's fifth cause of action, for declaratory judgment. And because "declaratory judgment" is not an independent claim, but simply a form of relief, the fifth cause of action can be *sua sponte* dismissed.

### G.   *Breach of New York Arts and Cultural Affairs Law § 12.01*

Under New York Arts and Cultural Affairs Law ("NYACAL") § 12.01, a consignment relationship is established when an artist delivers fine art to an art merchant, where such delivery is made (i) "for the purpose of exhibition and/or sale" (ii) "on a commission, fee, or other basis of compensation." N.Y. Arts & Cult. Aff. Law §§ 11.01, 12.01(1)(a); *see Lucy v. Lubov Fine Art LLC*, 2025 WL 3637425, at *3 (S.D.N.Y. Dec. 16, 2025). Courts have interpreted "basis of compensation" broadly to include financial arrangements in which an art merchant invests in works of art while the artist retains a continuing stake in the proceeds. *Khaldei v. Kaspiev*, 135 F.Supp.3d 70, 78 (S.D.N.Y. Sept. 28, 2015); *Wesselmann v. Int'l Images*, 172 Misc.2c' 247, 252 (N.Y.C Sup. Cty. Dec. 4, 1996). Such investments do not transform valid consignments into

24

outright sales "unless and until the price of such work is paid *in full.*" *Khaldei*, 135 F.Supp.3d at 78 (citing N.Y. Arts & Cult. Aff. Law §§ 11.01, 12.01(1)) (emphasis in original).

If a consignment relationship exists under the NYACAL, the statute requires the merchant to hold the artworks in trust for the benefit of the artist. *See* N.Y. Arts & Cult. Aff. Law § 12.01(1)(a)(iv). If the consigned work is resold to a bona fide third party, "the resale proceeds are trust funds in the hands of the [merchant] for the benefit of the [artist] to the extent necessary to pay any balance still due to the [artist]." *Id.* The statute clarifies that consigned artworks and sales proceeds "shall be considered property held in statutory trust, and no such trust property or trust funds shall become the property of the [merchant] or be subject or subordinate to any claims . . . of any kind . . . whatsoever of the [merchant]'s creditors." *Id.* § 12.01(1)(a)(v). If the statutory requirements are satisfied, the art merchant remains the artist's agent "until the fiduciary obligation of the [art merchant] with respect to such transaction is discharged" in its entirety. N.Y. Arts & Cult. Aff. Law § 12.01(1)(a)(iv).

Section 12.01(3) of the New York Arts and Cultural Affairs Law expressly provides that "Any person who has been injured by . . . a violation of this article may. . . enjoin such unlawful act. . . recover his or her actual damages, or both." N.Y. Arts & Cult. Aff. Law § 12.01(3).[5] The Court may award a prevailing plaintiff "reasonable attorneys' fees, costs and expenses." *Id.*

### 1.    *NYACAL Liability*

The threshold question is whether NYACAL § 12.01 limits its protections to New York residents. Nothing in the statute suggests that it does. It is frequently the case that New York laws

---

[5] NYACAL also authorizes injunctive relief, N.Y. Arts & Cult. Aff. Law § 12.01(3), but Plaintiff has not sought such relief here.

apply only to New York residents, but as far as I can tell, the NYACAL imposes no residency requirements on a plaintiff who is seeking to enforce its protections.[6]

The statute provides that "any person who has been injured by reason of a violation of this article may bring an action in his or her own name to enjoin such unlawful act, to recover his or her actual damages, or both." N.Y. Arts & Cult. Aff. Law § 12.01(3). The legislature's use of "any person" without qualification suggests intent to permit suits by both resident and nonresident plaintiffs.

Nothing in the statutory text conditions these protections on the residence of the artist. Elsewhere within the Arts and Cultural Affairs Law, the Legislature used explicit language where it intended geographic limitations. For example, other provisions refer to "nonresident exhibitors" or require certain applicants to be "residents of the state." See N.Y. Arts & Cult. Aff. Law §§ 12.03, 7.13, 3.19.

The absence of comparable language in § 12.01 indicates that the Legislature chose to define the protected class by role in the consignment relationship, not by residence. *Wood v. O'Grady*, 307 N.Y. 532, 540 (1954) ("It is axiomatic that [courts] may not, under the guise of interpretation, import into a statute conditions or criteria which the Legislature has been careful to omit."). The use of the phrase "any person" in the remedial provision strongly suggests the Legislature intended the cause of action to be broadly available to anyone injured by a violation of Article 12.

The legislative history of Article 12 reinforces that conclusion. The materials accompanying the statute's enactment explain that artists were particularly vulnerable to

---

[6] I will, however, note that the issue has not been briefed by the Plaintiff.

misconduct by art dealers because the customary practice required artists to consign their works to dealers before receiving payment, leaving artists dependent on dealers to account for and remit the proceeds of any sale. *See* Bill Jacket, L.1966, ch. 984, Memorandum of the Attorney General (noting that "unfortunately there are a number of dealers who apparently have misappropriated or withheld the proceeds of a sale")[7]. Then-New York Attorney General Louis Lefkowitz emphasized that the problem was particularly acute in New York, which had become a central marketplace for the exhibition and sale of fine art through commercial galleries. *See Id.* (observing that "some District Attorneys, including the District Attorney of New York County in which most of the galleries are located, have been understandably reluctant to prosecute art dealers when they misappropriate an artist's work," and explaining that the legislation was designed to address abuses arising from those consignment relationships). In short, the Legislature enacted the statute to regulate abuses in the artist–dealer consignment relationship in the New York art market, a purpose that is not advanced by barring nonresident artists from suing dealers operating in that market.

Courts have likewise applied NYACAL § 12.01 without regard to the plaintiff's residence. In *Khaldei v. Kaspiev*, the Southern District of New York applied § 12.01 in a dispute brought by the Russian heir of a Soviet photographer and relied on the statute's legislative history to explain that Article 12 was enacted to protect artists who depend on dealers to sell their work. *Khaldei v. Kaspiev*, 135 F. Supp. 3d 70, 78–79 (S.D.N.Y. Sept. 28, 2015). Although the *Khaldei* court did not specifically analyze plaintiff's residency, its application of the statute to a foreign plaintiff underscores that § 12.01 has been understood to protect consignors engaged in the covered commercial relationship, regardless of where the artist resides.

---

[7] New York courts have relied on this legislative history when interpreting the statute. *See, e.g., In re Friedman*, 64 A.D.2d 70, 80, 82 (2d Dep't Aug. 7, 1978) (citing Bill Jacket L.1966, ch. 984; and Bill Jacket L.1969, ch. 321, Memorandum of the State Department of Law).

27

New York's interest in policing the conduct of art merchants operating within its borders further supports applying § 12.01 regardless of the artist's residence. Because New York is "a worldwide center of the art trade," the State has a strong interest in policing its art market. *Solomon R. Guggenheim Found. v. Lubell,* 77 N.Y.2d 311, 318 (1991); *see also Bakalar v. Vavra,* 619 F.3d 136, 142 (2d Cir. 2010) (recognizing New York as "a major center of the international art market"). As the Court of Appeals has explained in the context of stolen art, New York's role as a premier international art market requires vigilance to ensure that the State does not become a safe harbor for fraud and misappropriation in the sale of artworks. *See Lubell,* 77 N.Y.2d at 319. That same concern underlies Article 12. *See* N.Y. Arts & Cult. Aff. Law § 12.01; Bill Jacket, L.1966, ch. 984. Accordingly, New York's interest in policing misconduct in its art market supports applying § 12.01 to claims against New York art dealers regardless of the artist's residence.

Turning to the merits, the Court finds that Scharf has pleaded facts tending to show Defendant's liability under the NY statute. The paintings are works of "fine art" for purposes of § 12.01; Scharf is an "artist"; and Jombihis is an "art merchant." *See* NYACAL §§ 11.01, 12.01(1)(a). Scharf himself delivered at least four works to Jombihis in approximately mid-February 2008. Dkt. No. 29-1; Dkt. No. 1-1. The Agreement allows Jombihis to sell the works in its discretion, and Jombihis has previously sold 26 works created by Scharf – which fairly admits of the inference that the purpose of Scharf's delivering the works to Jombihis was the exhibition and sale of works. *Lucy v. Lubov Fine Art LLC,* No. 24-Civ-8592 (JHR) (GWG), 2025 WL 3637425, at *3 (S.D.N.Y. Dec. 16, 2025).

Jombihis' right to retain 90% of the sales proceeds for those four paintings qualifies as a "basis of compensation" under NYACAL § 12.01(1)(a). Where an art merchant's financial investment does not constitute "payment in full" for specific works, any derivative right to sales

28

proceeds "must be considered simply another basis of compensation." *See Khaldei*, 135 F.Supp.3d at 78; *Wesselmann*, 172 Misc.2d at 252; *see* NYACAL § 12.01(1)(a)(iv). As noted in *Wesselmann*, and echoed by *Khaldei*, the "clear intent of the [NYACAL] is to create a trust relationship even when the art merchant makes a financial investment in the art." *Khaldei*, 135 F.Supp.3d at 78 (citing *Wesselmann*, 172 Misc.2d at 252); *In re Friedman*, 91 Misc.2d 201, 204 (Sur. Ct. Queens Cty. Aug. 1, 1977), *aff'd*, 64 A.D.2d 70, 80, 82 (2d Dep't Aug. 7, 1978). Consistent with this purpose, "an art merchant's financial investment in an artist's work does not transform an otherwise valid consignment into an outright sale unless and until the price of such work is paid *in full*." *Khaldei*, 135 F.Supp.3d at 78.

Applying these principles, the *Khaldei* court held that an art merchant's right to a percentage of sales proceeds is merely a "basis of compensation" consistent with a consignment. 135 F.Supp.3d at 78–79 (citing *Wesselmann*, 172 Misc. 2d at 252). This is true even if the merchant is a part owner of the work, such that its right to compensation derives from his ownership interest. The *Khaldei* court rejected the argument that purchasing a 50% ownership interest in the collection of works entitled the dealer to sales revenue as a co-owner rather than an agent under the NYACAL. *Id.* As that court explained, partial investment in an undivided collection of works is "exactly the type of financial investment—as opposed to full purchase—that the [NYACAL] is designed to protect artists against and which is insufficient to disrupt the creation of a trust relationship." *Id.* at 78–79.

Here Scharf created four paintings which he sent to Jombihis for exhibition and sale. Scharf was entitled to 10% of the proceeds of any sale; Jombihis to 90%. Whether or not the parties characterized this arrangement as a "sale" of 90% of Scharf's interest in the work or as a consignment is irrelevant; New York law treats this arrangement as a consignment, and imposes a

fiduciary duty on the art dealer, which lasts until the artist has been paid in full for his work. N.Y. Arts & Cult. Aff. Law § 12.01(1)(a)(iv). Under § 12.01(1)(a)(v), "such trust property and trust funds shall be considered property held in statutory trust, and no such trust property or trust funds shall become the property of the consignee." *Id.* Additionally, under § 12.01(1)(b), "waiver of any provision of this section is absolutely void." *Id.* § 12.01(1)(b).

So if any of the four paintings were sold, until Scharf get the 10% he is owed for his paintings, Jombihis remains liable to him under the statute. The proceeds from such sales, if any there were, "shall be considered property held in statutory trust," by Jombihis for Scharf's benefit. *Id.* § 12.01(1)(a)(iv), (v).

Unfortunately, we do not know whether these paintings have sold, or when the sales occurred. We also do not know whether Jombihis has failed to fully compensate Scharf for those four particular paintings (which are not identified in the list of works appended by Scharf), or has improperly appropriated Scharf's funds as its own in violation of the statutory trust provisions of the NYACAL. It is, therefore, not possible to award him a default judgment, because his entitlement to a default judgment is not clear as a matter of law.

This analysis applies equally to the remaining 65 works. Scharf pleaded facts tending to show that, whatever his relationship with the prior owners may have been, Scharf agreed to consign those 65 works to Jombihis in 2007. Any doubts concerning this arrangement are dispelled by the fact that Defendant paid Plaintiff 10% of the proceeds for sixteen of the works before abruptly stopping around 2015, Dkt. No. 1 ¶¶ 17–20, which confirms the existence of a consignment relationship.

With respect to these 65 works, the same problem remains as with the 4 discussed above: the Court must know which paintings were sold, when those sales occurred, and whether the

unpaid proceeds owed to Scharf have been improperly comingled with Jombihis's assets. An accounting of the works and proceeds held by Jombihis will allow the Court to determine whether and how Plaintiff may recover under the New York statute.

For the reasons above, default judgment on the NYACAL claim is DENIED without prejudice pending renewal. This. too, can be handled by the Magistrate Judge at an inquest.

### *H.      Accounting*

A fiduciary relationship is a prerequisite to an equitable accounting remedy. *Palazzo v. Palazzo*, 121 A.D.2d 261, 263 (1st Dep't June 17, 1986). Because NYACAL § 12.01 establishes such a relationship between an artist and an art merchant, the statute provides the necessary foundation for Plaintiff to bring a claim for an accounting. *See Khaldei*, 135 F.Supp.3d at 77-78 (recognizing that NYACAL creates a trust relationship giving rise to fiduciary obligations); *Morgan Art Foundation Ltd. V. Brennan*, 2020 WL 469982, at *25 (noting that "recent cases in New York hold that a fiduciary relationship creates 'an absolute to an accounting notwithstanding the existence of an adequate remedy at law.'"); *Scher v. Stendha; Gallery, Inc.*, 117 A.D.3d 146, 158 (1st Dep't Mar. 27, 2014).

Accounting is an equitable remedy subject to the fiduciary tolling rule: the limitations period does not begin to run until the fiduciary openly repudiates the relationship or it is otherwise terminated. *Access Point Med., LLC*, 106 A.D.3d 40, 45 (1st Dep't Apr. 2, 2013). On the facts pleaded, Jombihis openly repudiated its fiduciary obligation, at the earliest, on September 3, 2025, when it refused to pay Scharf for the ten works it had already sold and instead offered half of what it already owed, both to satisfy its debt to Scharf and acquire his ownership interests in the 43 unsold artworks. Dkt. No. 29-4, at 1. As Jombihis had not discharged its obligation to Scharf prior to repudiating the fiduciary relationship, and no facts are pleaded tending to show that Jombihis

31

openly repudiated the fiduciary relationship prior to its refusal to remit payment on September 3, 2025, Dkt. No. 29-4, at 1, the statute of limitations for the accounting claim did not accrue until September 3, 2025, and the claim is therefore timely.

The Plaintiff is entitled to a default judgment on his claim for an accounting. An accounting will go a long way toward establishing whether he has a viable breach of contract or New York statutory claim.

To the extent of seeking an accounting the motion for default judgment is GRANTED. If the Defendant does not cooperate with the accounting, the court will refer the matter to the Magistrate Judge to superintend.

### I.    Costs, Pre-Judgment Interest, and Attorney's Fees

Issues relating to an award of costs, pre-judgment interest and attorneys' fees must abide the entry of a final judgment. There will be no such judgment until the plaintiff has obtained his accounting.

### J.    Duplicative Claims

Where claims for conversion or breach of fiduciary duty are predicated on the same damages and wrongs underlying a claim for breach of contract, they are duplicative of the contract claim and must be dismissed. *See N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F.Supp.2d 94, 105 (S.D.N.Y. Jan. 14, 2013); *Jakob v. JPMorgan Chase Bank, N.A.*, 639 F.Supp.3d 406, 414 (E.D.N.Y. Nov. 8, 2022).

Here, Scharf's breach of fiduciary duty claim is "premised upon the same facts and seek the same damages" as the breach of contract claim, *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F.Supp.2d 94, 106 (S.D.N.Y. Jan. 14, 2013), and is predicated on the same duty as the NYACAL claim, *Bd. of Managers of Brightwater Towers Condo. v. FirstService Residential New*

32

*York, Inc.*, 193 A.D.3d 672, 672 (2d Dep't Apr. 7, 2021), It is, therefore, duplicative of those claims. Additionally, because the breach of contract and conversion claims do not allege separately actionable wrongs, the conversion claim is also duplicative. *Jakob v. JPMorgan Chase Bank, N.A.*, 639 F.Supp.3d 406, 414 (E.D.N.Y. Nov. 8, 2022). Accordingly, the court dismisses Scharf's claims for breach of fiduciary duty and conversion (Counts 3 and 4).

### Conclusion

For the foregoing reasons, Scharf's motion for a judgment of default on his breach of contract claim and New York Arts and Cultural Affairs Law claims is DENIED without prejudice to renewal following an inquest. at which the Plaintiff must establish the dates on which the art works at issue were sold, so that damages can be calculated. Magistrate Judge Gary Stein will present the court with a Report and Recommendation.

Plaintiff's motion for a default judgment on his claims for conversion, breach of fiduciary duty, and declaratory judgment is DENIED, and for the reasons stated in the opinion these claims (two of which are duplicative of plaintiff's breach of contract and statutory claims, one of which seeks advisory relief) are DISMISSED.

Plaintiff's motion for a default judgment on his claim for an accounting is GRANTED. Because an accounting will assist the court in ascertaining whether damages are owed in connection with Plaintiff's other viable claims and in what amount, there is no just reason to delay the entry of final judgment on that claim. Accordingly, the Clerk of Court is directed to enter final judgrnent on Count 6, pursuant to Fed. R. Civ. P 54(b).

Dated: March 17,  2026

Hon. Colleen McMahon

United States District Court Judge

34